```
_____ FILED _____ LODGED
_____ RECEIVED
        Jun 6 2022
    CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY
```

Hon. Theresa L. Fricke

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JESUS VENEGAS-GATICA,
JOSE VENEGAS-GATICA,
JUAN TOLENTINO-CHINO,
CRISTOBAL VENEGAS-DIAZ, and
█████████████████████

Defendants.

CASE NO. 3:22-mj-05089

COMPLAINT for VIOLATIONS

21 U.S.C. § 841(a)(1), (b)(1)(A)

BEFORE the Honorable Theresa L. Fricke, United States Magistrate Judge, U.S. Courthouse, Tacoma, Washington, the undersigned complainant being duly sworn states:

## COUNT 1

### (Distribution of a Controlled Substance)

On or about March 3, 2022, in Thurston County within the Western District of Washington, and elsewhere, JOSE VENEGAS-GATICA, JUAN TOLENTINO-CHINO, and others known and unknown, did knowingly and intentionally distribute, and aid and abet the distribution of, a controlled substance, including: methamphetamine, a substance controlled under Title 21, United States Code.

COMPLAINT – 1
*United States v. Venegas-Gatica et al*

It is further alleged that the offense involved 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT 2

### (Distribution of a Controlled Substance)

On or about March 9, 2022, in Grays Harbor County within the Western District of Washington, and elsewhere, JOSE VENEGAS-GATICA, JUAN TOLENTINO-CHINO, and others known and unknown, did knowingly and intentionally distribute, and aid and abet the distribution of, a controlled substance, including: methamphetamine, a substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT 3

### (Possession of a Controlled Substance with Intent to Distribute)

On or about March 31, 2022, in Cowlitz County, within the Western District of Washington, and elsewhere, JESUS VENEGAS-GATICA, ███████████████████ ███, and others known and unknown, did knowingly and intentionally possess, with the intent to distribute, and did aid and abet the possession of, with the intent to

COMPLAINT – 2
*United States v. Venegas-Gatica et al*

distribute, a controlled substance, including: methamphetamine, a substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT 4

### (Distribution of a Controlled Substance)

On or about April 7, 2022, in Lewis County within the Western District of Washington, and elsewhere, CRISTOBAL VENEGAS-DIAZ, JOSE VENEGAS-GATICA, and others known and unknown, did knowingly and intentionally distribute, and aid and abet the distribution of, a controlled substance, including: methamphetamine, a substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT 5

### (Distribution of a Controlled Substance)

On or about April 21, 2022, in Lewis County, within the Western District of Washington, and elsewhere, CRISTOBAL VENEGAS-DIAZ, and others known and unknown, did knowingly and intentionally distribute, and aid and abet the distribution of,

COMPLAINT – 3
*United States v. Venegas-Gatica et al*

a controlled substance, including: methamphetamine, a substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT 6

### (Possession of a Controlled Substance with Intent to Distribute)

On or about May 11, 2021, in Pierce County, within the Western District of Washington, and elsewhere, the defendant, JESUS VENEGAS-GATICA and others known and unknown, did knowingly and intentionally possess, with the intent to distribute, and did aid and abet the possession of, with the intent to distribute, a controlled substance, including: methamphetamine, a substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT 7

### (Possession of a Controlled Substance with Intent to Distribute)

On or about May 11, 2021, in Lewis County, within the Western District of Washington, and elsewhere, the defendant, CRISTOBAL VENEGAS-DIAZ and others

COMPLAINT – 4
*United States v. Venegas-Gatica et al*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

known and unknown, did knowingly and intentionally possess, with the intent to distribute, and did aid and abet the possession of, with the intent to distribute, a controlled substance, including: methamphetamine, a substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

## INTRODUCTION

1.      I, Colin Fine, am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.      I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since employed as such since April 2017. In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, et seq.). I am currently assigned to the Seattle Field Division, Tacoma Resident Office. As a DEA Special Agent, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. My training and experience include, but are not limited to, a 20-week course at the DEA academy in Quantico, Virginia. At the DEA academy, I was trained in all aspects of conducting narcotics investigations to include debriefing defendants, witnesses, and informants, conducting surveillance, executing search warrants, conducting controlled

COMPLAINT – 5
*United States v. Venegas-Gatica et al*

deliveries, utilizing law enforcement, open source, and social media databases, and seizing narcotics and narcotics-related assets. Prior to my employment with DEA, I served 12 years on active duty in the United States Marine Corps, achieving the rank of Gunnery Sergeant.

3.      During the course of my law enforcement career, I have become familiar with investigations of drug trafficking organizations, methods of importation and exportation, distribution, and smuggling of controlled substances, and financial and money laundering investigations. I have participated in investigations involving organizations trafficking in controlled substances, and such investigations have resulted in the arrests of drug traffickers and seizures of controlled substances. I have participated in the execution of drug search warrants and have personally been involved in the seizure of controlled substances. Based on my training, experience and conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances.

4.      The facts set forth in this affidavit arise from my personal and direct participation in the investigation, my experience and training as a DEA Special Agent, my conversations with witnesses and other law enforcement personnel participating in this and related investigations, and my review of relevant documents and reports. My specialized training and experience in drug investigations, as well as the assistance and input of experienced fellow investigators, form a basis for my opinions and conclusions, which I drew from the facts set forth herein. When I have included event times, those times are approximate. When I have included summaries of conversations, the summaries are not intended to present a verbatim recitation of the words used by the participants.

5.      I have set forth only the facts I believe are necessary to establish probable cause to believe that JESUS VENEGAS-GATICA, JOSE VENEGAS-GATICA, JUAN TOLENTINO-CHINO, CRISTOBAL VENEGAS-DIAZ, CUTBERTO HERNANDEZ-GATICA, and ███████████████████, have committed the crimes of distribution of methamphetamine and possession with the intent to distribute

COMPLAINT – 6
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## SUMMARY OF INVESTIGATION

### Background

6.      This investigation was conducted by the DEA Tacoma Resident Office, the Lewis County Joint Narcotics Enforcement Team (JNET), and the Grays Harbor Drug Task Force (GHDTF). I have obtained and read reports prepared by various law enforcement officers participating in this investigation, including but not limited to Special Agents and Task Force Officers with DEA, detectives and officers from JNET, GHDTF, and other various departments or agencies, along with other sources of information. When I refer to the criminal history of a subject, confidential source (CS), or confidential informant (CI), I have read the available criminal history from state or federal agencies. When I have included event times, those times are approximate. When I have included summaries of conversations, the summaries are not intended to present a verbatim recitation of the words used by the participants.

### The Venegas family has been trafficking controlled substances in Washington since 2012

7.      In 2012, law enforcement learned through confidential informants and surveillance that several members of the Venegas family were conspiring to transport and distribute controlled substances throughout Washington. In 2012, law enforcement seized 15 pounds of methamphetamine from JESUS VENEGAS-GATICA, under his alias of Chago Marin-Castillo, which led to charges of Unlawful Possession of Methamphetamine with the Intent to Deliver out of Lewis County. He subsequently fled and created multiple fake aliases to avoid detection by law enforcement.

8.      In 2013, law enforcement seized a total of 70 pounds of methamphetamine, $120,000, and 10 firearms from various current and former members of the Venegas DTO, including JESUS VENEGAS-GATICA, Dionicio Venegas-Gatica, and Venacio

COMPLAINT – 7
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Bastion-Tolentino. These defendants subsequently fled the area and created multiple fake aliases to avoid detection by law enforcement.

9.     In 2015, law enforcement seized three pounds of methamphetamine from Dionicio Venegas-Gatica. He subsequently fled the area.

10.     In 2019, law enforcement seized 20 pounds of methamphetamine from JOSE VENEGAS-GATICA, which resulted in charges of Unlawful Possession of Methamphetamine with the Intent to Deliver, Delivery of Methamphetamine, Tampering with Physical Evidence, and Leading Organized Crime out of Kitsap County. After being charged, he fled the area and created fake aliases to avoid detection by law enforcement.

11.     Members of the Venegas DTO have a long history of trafficking large quantities of narcotics, fleeing the state and country once their law enforcement uncover their criminal enterprise, waiting for several months or years until the heat dies down, and then returning to Washington to continue trafficking narcotics.

### 2022 Investigation into the Venegas DTO

12.     In early 2022, law enforcement learned through sources of information, confidential enforcements, and law enforcement surveillance operations that the Venegas DTO had restarted its drug trafficking enterprise. The Venegas DTO was distributing large amounts of methamphetamine within Washington State, which they transport to Washington from California and beyond. Throughout the current investigation, law enforcement identified JESUS VENEGAS-GATICA, JOSE VENEGAS-GATICA, HERNESTINA VENEGAS-GATICA, CRISTOBAL VENEGAS-GATICA, JUAN TOLENTINO-CHINO, CUTBERTO HERNANDEZ-GATICA, and ██████████ ██████████ as being directly responsible for the distribution of over 105 pounds of methamphetamine within the counties of Cowlitz, Lewis, Grays Harbor, Thurston, and, Pierce as mentioned throughout the rest of this affidavit. During the investigation, the Honorable Judge J. Lawler, Lewis County Superior Court, Washington, authorized ten Trap and Trace ping orders, six GPS vehicle tracker warrants, six arrest warrants, one

COMPLAINT – 8
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  vehicle search warrant, and two residential search warrants. Additionally, the Honorable

2  Adolfo M. Corona, Fresno County Superior Court, California, authorized a residential

3  search warrant in Fresno, California.

4       13.    This investigation entailed the use of two confidential sources. To protect

5  their identities, they will be referred to as CI 309 and CI 311.

6       14.    CI 309 has no known criminal history for crimes of deception. As detailed

7  later in this affidavit, CI 309 provided information to law enforcement that had

8  previously been corroborated or acted upon to confirm their reliability. CI 309 is

9  providing law enforcement with information for consideration on narcotic trafficking

10  charges. CI 309 proved their reliability by providing credible and reliable information on

11  an unrelated investigation.

12       15.    CI 311 has one conviction for a misdemeanor crime of deception that is

13  over 16 years old. During this investigation, CI 311 has been deemed to be credible and

14  reliable because they provided information that law enforcement verified to be accurate

15  including: the identities, phone numbers, and vehicles utilized by Venegas DTO

16  members. CI 311 is providing law enforcement with information for consideration on

17  narcotic trafficking charges. CI 311 has historically been proven credible and reliable. In

18  an unrelated investigation, CI 311 provided information and conducted a controlled

19  purchase that led to at least one federal conviction and the seizure of 4.8 kilograms of

20  methamphetamine and over 1.7 kilograms of heroin.

21

22       **Hernestina Venegas-Gatica and Cristobal Diaz-Venegas transport over 20**
         **kilograms of methamphetamine to Washington each month**

23       16.    In January 2022, CI 309 provided investigators information on the Venegas

24  DTO. CI 309 corroborated many facts about the Venegas DTO that were already known

25  by law enforcement including how JESUS VENEGAS-GATICA had assumed the new

26  name of "Apolonio Cuahutenango" and was driving numerous vehicles that investigators

27  had previously identified. Law enforcement had previously identified this as an alias for

28

COMPLAINT – 9
*United States v. Venegas-Gatica et al/*
2022R00583

JESUS VENEGAS-GATICA through a WA Department of Licensing check of registered vehicles and WA Driver License records showing that a picture of "Apolonio Cuahutenango" matched pictures of JESUS VENEGAS-GATICA from previous investigations.

17.     CI 309 stated that JESUS VENEGAS-GATICA's sister (HERNESTINA VENEGAS-GATICA) and uncle (CRISTOBAL VENEGAS-DIAZ) work together to transport 20 to 25 kilograms of methamphetamine from California to Washington State every month. CI 309 stated that HERNESTINA VENEGAS-GATICA and CRISTOBAL VENEGAS-DIAZ both drive and utilize Amtrak to transport money south and drugs north. CI 309 provided HERNESTINA VENEGAS-GATICA's cellphone as 360-623-6251 (Hernestina's phone) and CRISTOBAL VENEGAS-DIAZ's as 714-495-9418 (Cristobal's phone). According to CI 309, they both usually carry their phones with them and during their drug runs. A historical check with Amtrak showed HERNESTINA VENEGAS-GATICA repeatedly traveled between Sacramento, CA and Tacoma, WA.

18.     CI 309 said that Dionicio Venegas-Gatica and JOSE VENEGAS-GATICA are JESUS VENEGAS-GATICA's brothers and his direct co-conspirators in transporting and distributing narcotics. CI 309 said that JESUS VENEGAS-GATICA has numerous apartments or houses where he stays or keeps personal belongings, including one off of Borst Avenue in Centralia and another in Grand Mound.

**CI 311 reported that JUAN TOLENTINO-CHINO sold him/her methamphetamine on behalf of the Venegas DTO.**

19.     In March 2022, CI 311 provided investigators information on the Venegas DTO. Prior to working with law enforcement, CI 311 had been obtaining methamphetamine from the Venegas DTO. When shown pictures by investigators, CI 311 positively identified JESUS VENEGAS-GATICA, as the person who provided them with an initial sample of methamphetamine and provided them with a phone number, 360-206-1339 (**Jose's first phone**), which is used as a dispatch number to call to place an

COMPLAINT – 10
*United States v. Venegas-Gatica et al*/
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

order for methamphetamine. As will be detailed later in this affidavit, law enforcement later identified Jose as the user of this phone. CI 311 stated that they would call **Jose's first phone** when they wanted methamphetamine and that JUAN TOLENTINO-CHINO would meet them at the agreed upon location to exchange methamphetamine for U.S. currency. CI 311 stated that they had previously received more methamphetamine than they had paid for and was currently in debt to the Venegas DTO. Law enforcement provided CI 311 a picture of JUAN TOLENTINO-CHINO, and they identified JUAN TOLENTINO-CHINO as the person who had delivered them methamphetamine. CI 311 stated that the Venegas DTO was selling pounds of methamphetamine for $2,500.

### Buy/Walk #1 (Lucky Eagle Casino/Thurston County)
### One Pound of Methamphetamine

20.     On March 3rd, 2022,[1] investigators instructed CI 311 to contact the Venegas DTO through **Jose's first phone**. Law enforcement listened to the phone call. CI 311 asked to purchase one pound of methamphetamine. The male who answered the phone agreed to sell CI 311 the methamphetamine and stated that they would send someone other than themselves. The male and CI 311 agreed to do the transaction near the hotel at the Lucky Eagle Casino.

21.     Prior to the agreed upon meet time, law enforcement met with CI 311 and searched them and their belongings, yielding nothing criminal. Law enforcement drove CI 311 to the agreed upon location. Law enforcement provided CI 311 with $2,700 in pre-recorded buy funds. Law enforcement placed a wire intercept on CI 311 to ensure their safety.

22.     CI 311 received a call from **Jose's first phone**. The male stated that the delivery driver had arrived at the casino. Law enforcement saw a silver 2001 Honda

---

[1] Throughout this affidavit, I use vague dates when discussing the activities of confidential informants even though the exact date is known to law enforcement. This is necessary to protect the identity of the confidential informant. Otherwise, the suspects would be able to look at their text records to specific dates and times to reveal their identity. Based on my training and experience, revealing the identity of confidential informants to drug traffickers can create a risk to their physical safety and even the safety of their families.

COMPLAINT – 11
*United States v. Venegas-Gatica et al*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Accord bearing Washington plate #CBJ0356 approaching the hotel. Law enforcement had observed JUAN TOLENTINO-CHINO driving this vehicle on several prior occasions. Law enforcement saw the driver of the vehicle and confirmed it was JUAN TOLENTINO-CHINO. Once JUAN TOLENTINO-CHINO parked his vehicle, CI 311 walked over to and entered his vehicle. Once inside, he provided JUAN TOLENTINO-CHINO with $2,700 in pre-recorded buy funds in exchange for approximately one pound of methamphetamine. Law enforcement kept CI 311 under constant surveillance from the time they left the car until they returned with the methamphetamine. Law enforcement tested the methamphetamine CI 311 bought from JUAN TOLENTINO-CHINO. It field tested positive for the presence of methamphetamine. The Drug Enforcement Administration Western Regional Laboratory later tested this methamphetamine and provided a report showing the substance as being 99% ($\pm$ 6%) pure methamphetamine hydrochloride being and 441.9 grams ($\pm$ 27.0 grams) of pure substance.

23.     Law enforcement followed JUAN TOLENTINO-CHINO as he left the Lucky Eagle Casino. He drove to the El Amigo's store in Centralia. After, JUAN TOLENTINO-CHINO did a series of evasive maneuvers, commonly called "heat checks," that enabled him to successfully evade law enforcement. After the deal, CI 311 received a call from **Jose's first phone**. The male said that if CI311 ever get in trouble, that he would bail CI 311 out.

### Buy/Walk #2 (Hoquiam/Grays Harbor County)
### One Pound of Methamphetamine

24.     On March 9th, 2022, CI 311 called **Jose's first phone** and requested one pound of methamphetamine be delivered to them at the Lucky Eagle Casino. The male on the other end of the line stated that he would have to call his "cousin" to see if this was a possibility. The male called back and said that his cousin could be in Hoquiam in 1 hour and 40 minutes. At the direction of law enforcement, CI 311 agreed to meet in Hoquiam to purchase the methamphetamine.

COMPLAINT – 12
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

25. Law enforcement drove CI 311 to Hoquiam and set up surveillance. Law enforcement searched CI 311 and confirmed that they had no narcotics on their person. Law enforcement provided CI 311 $2,800 in prerecorded buy funds and attached a wire intercept device to monitor their safety. Law observed JUAN TOLENTINO-CHINO's silver Honda Accord bearing Washington plate #CBJ0356 drive through town toward the meet location. Law enforcement kept CI 311 under constant supervision as they approached and entered the silver Honda Accord. JUAN TOLENTINO-CHINO drove CI 311 around the block and dropped them back off. During that drive, CI 311 said that he handed JUAN TOLENTINO-CHINO $2,800 in buy funds in exchange for approximately one pound of methamphetamine. Law enforcement kept CI 311 under constant supervision as they walked to and from the undercover vehicle and handed them the suspected methamphetamine. Law enforcement field tested the suspected methamphetamine, which tested positive for the presence of methamphetamine. The Drug Enforcement Administration Western Regional Laboratory later tested this methamphetamine and provided a report showing the substance as being 99% ($\pm$ 6%) pure methamphetamine hydrochloride being and 443.1 grams ($\pm$ 27.1 grams) of pure substance.

26. Law enforcement attempted to follow JUAN TOLENTINO-CHINO out of Hoquiam, he once again made a series of evasive maneuvers and eventually successfully evaded law enforcement surveillance.

**Information from CI 309**

27. In mid-March 2022, CI 309 contacted investigators and stated that JOSE VENEGAS-GATICA had recently fled Washington State to Fresno, California. CI 309 stated that members of the Venegas DTO relayed information saying that they felt they were being watched/followed by law enforcement or bail agents. An associate of the Venegas DTO told CI 309 that several members were fleeing to Oregon for an unknown amount of time to avoid detection from law enforcement and to let things "cool off."

COMPLAINT – 13
*United States v. Venegas-Gatica et al*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

28.     On March 14th, 2022, through a Trap and Trace Ping order, investigators began receiving pings for a phone utilized by JUAN TOLENTINO-CHINO, 360-206-1340 (**Juan's phone**). The ping location data revealed that JUAN TOLENTINO-CHINO was now living at 1720 4th Avenue, Astoria, Oregon and working at Pacific Coast Seafood located at 450 NE Skipanon Drive, Warrenton, Oregon.

### $800 Money Drop (Lucky Eagle Casino/Thurston County)

29.     In late March 2022, at the direction of investigators, CI 311 called **Jose's first phone** to set up a meet to pay his/her $800 drug debt. The male on the phone stated that they would send their "uncle" to meet them. CI 311 texted **Jose's first phone** and asked for another pound of methamphetamine. **Jose's first phone** responded: "of course." Approximately 20 to 30 minutes later, CI 311 received a call from **Jose's first phone**. The male stated that there was no methamphetamine available and that it would be a couple of days until there was more. CI 311 agreed to meet the caller's "uncle" at the Lucky Eagle Casino to pay the $800.

30.     Law enforcement knew that CRISTOBAL VENEGAS-DIAZ is JOSE and JESUS's uncle. According to the Department of Licensing, CRISTOBAL VENEGAS-DIAZ owns a silver Honda, bearing Oregon License Plate #559MYS (**Cristobal's vehicle**).

31.     Law enforcement drove CI 311 to the Lucky Eagle Casino and set up surveillance. Law enforcement searched CI 311 and confirmed that they had no narcotics or U.S. currency on their person. Law enforcement provided CI 311 $800 in prerecorded buy funds and attached a wire intercept device to monitor their safety. While CI 311 was with investigators, CI 311 received a call from **Jose's first phone**. The male caller stated that their "uncle" would arrive in approximately 20 minutes. Within minutes, investigators observed CRISTOBAL VENEGAS-DIAZ driving **Cristobal's vehicle** west bound on US Hwy 12 in the direction of the casino.

COMPLAINT – 14
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

32.     Once CRISTOBAL VENEGAS-DIAZ arrived, CI 311 met him at **Cristobal's vehicle**, and handed him the $800 in pre-recorded buy funds. Law enforcement kept CI 311 under constant supervision.

33.     Law enforcement maintained surveillance on CRISTOBAL VENEGAS-DIAZ as he left the casino and drove to a trailer in Grand Mound associated with the Venegas DTO. After approximately 5 to 10 minutes, CRISTOBAL VENEGAS-DIAZ left the trailer and drove south. Law enforcement followed CRISTOBAL VENEGAS-DIAZ to an apartment building at 3007 Borst Avenue, Centralia, Washington where he walked up the stairs and entered apartment #D-7 (**the Centralia residence**).

### Amtrak Interdiction (Kelso/Cowlitz County)
### 55 Pounds of Methamphetamine

34.     On March 1st, 2022, through a Trap and Trace Ping order, investigators began receiving pings from **Hernestina's phone.** Law enforcement confirmed CI 309's statement that the phone belongs to HERNESTINA VENEGAS-GATICA by observing her on multiple occasions traveling within the margin of error of the phone pings. Law enforcement observed HERNESTINA VENEGAS-GATICA living, visiting, and/or staying at multiple locations throughout this investigation, including addresses in Astoria, Oregon and **the Centralia Residence**.

35.     On March 22, 2022, through a Trap and Trace Ping order, investigators began receiving pings for 425-316-7560 (**Jesus's first phone**) utilized by JESUS VENEGAS-GATICA. Law enforcement identified JESUS VENEGAS-GATICA as the owner of the phone because they observed him traveling in the same pattern as the phone pings from **Jesus's first phone** on several occasions. Law enforcement observed JESUS VENEGAS-GATICA staying the night at multiple locations throughout this investigation, including **the Centralia Residence** and 5117 87th Street Court SW, Apt H-303, Lakewood, Washington (**Lakewood Residence**).

COMPLAINT – 15
*United States v. Venegas-Gatica et al*/
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

36.     Between March 24th and March 29th, 2022, CI 309 contacted investigators, and stated that both HERNESTINA VENEGAS-GATICA and JESUS VENEGAS-GATICA were in California. CI 309 stated that they did not know how HERNESTINA VENEGAS-GATICA traveled to CA, but that they observed both HERNESTINA VENEGAS-GATICA and JESUS VENEGAS-GATICA traveling together in a dark colored Dodge Charger. A check of their ping locations confirmed that both HERNESTINA VENEGAS-GATICA and JESUS VENEGAS-GATICA had left Washington and were now in California. While both **Jesus's first phone** and **Hernestina's phone** were in California, they appeared to mostly travel in tandem throughout the state indicating that HERNESTINA VENEGAS-GATICA and her brother, JESUS VENEGAS-GATICA were traveling together.

37.     On March 28th, 2022, the phone pings from **Hernestina's phone** and **Jesus's first phone** were at the same location as **Jose's first phone**, near address 1417 East Calwa Avenue, Fresno, California (**the Fresno Residence**). Law enforcement observed a dark blue Dodge Charger bearing WA plates # CCG2397 parked in front of **the Fresno Residence**. A Washington DOL check revealed that this vehicle was registered to CRISTOBAL VENEGAS-DIAZ.

38.     On March 29th, 2022, pings on **Hernestina's phone** and **Jesus's first phone** showed them traveling in Tandem from Stockton, California towards Sacramento. Investigators contacted an Amtrak Agent to see if they were using trains to transport themselves and/or drugs north. The Amtrak Agent stated that HERNESTINA VENEGAS-GATICA had not purchased a ticket for that evening's departure. At approximately 2128 hours, **Hernestina's phone** was at the Amtrak Station in Sacramento with an 18 meter margin of error. JESUS VENEGAS-GATICA's cellular device was also in close proximity of error. The Amtrak Agent relayed that at 2132 hours, a one way ticket for an ▮▮▮▮▮▮▮▮▮ was purchased with cash for March 30th, from Sacramento to Kelso, WA, departing at approximately 2350 hours. The subsequent pings for **Jesus' first phone** and **Hernestina's phone** showed that it was now traveling back

COMPLAINT – 16
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  south towards Stockton. The Amtrak Agent stated that whoever purchased the ticket did
2  not scan an ID card nor provide a phone number or email address. According to the
3  Amtrak Agent, all of these indicators combined are a red flag for nefarious activities. The
4  benefit of purchasing the ticket in person as opposed to online is to avoid the required
5  date of birth, email, and phone number as required with the online system. Paying in cash
6  avoids a credit card paper trail, and enables the ticket purchaser to remain anonymous.

7       39.   The Amtrak Agent provided a still picture of video showing the purchase of
8  the ticket. In the picture were two Hispanic males, JESUS VENEGAS-GATICA and a
9  Hispanic male (later identified as              ). The Amtrak Agent
10  stated that JESUS VENEGAS-GATICA purchased the ticket for
11              JESUS VENEGAS-GATICA provided cash, directed the
12  transaction, and then handed          the ticket.

13       40.   In the noon hours of March 31st, 2022, pings on **Hernestina's phone** and
14  **Jesus's first phone** showed them traveling together north on I-5 and entering
15  Washington State. Law enforcement located HERNESTINA VENEGAS-GATICA and
16  JESUS VENEGAS-GATICA in Chehalis driving the same Charger they were using in
17  California. Law enforcement photographed them driving together. JESUS VENEGAS-
18  GATICA was still wearing the same exact hat and shirt in this photograph as the one
19  taken at Amtrak.

20       41.   On March 31st, 2022, investigators boarded the Amtrak train in Salem,
21  Oregon, which           had boarded. Law enforcement
22  identified and began surveilling          .

23       42.   When the train arrived in Kelso, Washington, law enforcement followed
24              off the train and saw him get two large suitcases from
25  the baggage area. Law enforcement contacted          after he
26  grabbed his bags. Law enforcement identified themselves with their badges and began
27  speaking to          in Spanish.        
28      initially denied having any controlled substances. He agreed to allow the

COMPLAINT – 17
*United States v. Venegas-Gatica et al*/
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   investigators to search his bags. Law enforcement opened the two bags, which contained

2   a total of 25 bundles of methamphetamine. Law enforcement later tested and weighed the

3   methamphetamine. It field tested positive for methamphetamine and weighed roughly 55

4   pounds. The bag also contained a family picture of ███████████████████ and

5   his Washington State driver's license.

6          43.    Law enforcement observed JUAN TOLENTINO-CHINO, holding **Juan's**

7   **phone**, at the Amtrak Station almost 2 hours before the train's scheduled arrival time. He

8   stayed in the parking lot for over an hour past the train's departure and ████████

9   ████████████ detention. Around 2100 hours, while ████████████████

10  ██████ was with investigators, he received a phone call from a blocked number which he

11  answered and stated in Spanish that he had been contacted by law enforcement but was

12  about to be released. Shortly thereafter, **Juan's phone** pings failed to locate, which is an

13  indicator that the device was turned off. In my training and experience, drug traffickers

14  will turn off their cell phones when they are attempting to avoid detection by law

15  enforcement. Law enforcement then saw JUAN TOLENTINO-CHINO leave the train

16  station. **Juan's phone** did not ping again until it was in Astoria, Oregon where law

17  enforcement believe he is currently living.

18

19                          ███████████████ **Interview**

20         44.    Law enforcement transported ██████████████████ to an

21  interview room at Kelso Police Department. The interview was audio and video recorded.

22  ████████████████████ was not in handcuffs. Spanish speaking agents read

23  ████████████████████ his Miranda Warnings again in Spanish. He

24  acknowledged that he understood and agreed to speak with investigators. ██████████

25  ████████████████ stated that he had traveled from Sacramento, California to Kelso,

26  Washington with the two suitcases full of methamphetamine at the direction of an

27  individual known to him as "Chucin" and "Jesus." ████████████████████,

28  without referring to his cellphone, wrote down "Jesus's" phone number as 425-316-7560

COMPLAINT – 18
*United States v. Venegas-Gatica et al/*
2022R00583

1  (**Jesus's first phone**). ███████████ stated that this was one of only

2  a few phone numbers contained in his cellphone. ███████████

3  granted consent for investigators to download his phone while the interview took

4  place. ███████████ described "Jesus" as a shorter, heavy set Hispanic

5  male, with a little bit of facial hair. He stated that Jesus was in his 30's, and from the town

6  of Guerrero, Mexico. This is an accurate description of JESUS VENEGAS-GATICA.

7       45.    ███████████ stated that within the past two days,

8  JESUS VENEGAS-GATICA and a female were staying at a hotel by the interstate in

9  Stockton, California. ███████████ did not know the female's name,

10  but described the female as approximately 2" shorter than him, older than JESUS

11  VENEGAS-GATICA, heavy set, with auburn colored hair. This physical description

12  matches the description for HERNESTINA VENEGAS-GATICA. This description

13  paired with the phone ping evidence and law enforcement observations shows that

14  HERNESTINA VENEGAS-GATICA was staying in the hotel room with ███████

15  ███████████ and JESUS VENEGAS-GATICA. ███████████

16  stated that it was only the three of them staying in the hotel room.[2]

17       46.    ███████████ stated that another male, whose name was

18  also unknown to ███████████, came to their hotel room with the

19  methamphetamine. ███████████ stated that JESUS VENEGAS-

20  GATICA, the female believed by law enforcement to be HERNESTINA VENEGAS-

21  GATICA, and the unknown male, put on gloves, packaged the methamphetamine, and

22  placed it into the two suitcases. ███████████ stated that he knew that

23  there were 25 individual packages placed into the two suitcases. He said that the female

24  (HERNESTINA VENEGAS-GATICA) placed the two black zip-ties onto the

25  suitcases. While this was occurring, the unknown male asked JESUS VENEGAS-

26

27  ────────────────

28  [2] Law enforcement did not show ███████████ pictures of Jesus Venegas-Gatica or Hernestina Venegas-
Gatica because they felt that doing so would compromise the investigation by identifying individuals known to law
enforcement to be a part the Venegas DTO to a current member of the Venegas DTO.

1  GATICA and the female (HERNESTINA VENEGAS-GATICA) who was going to be
2  the one transporting the methamphetamine from California to Washington. They both
3  turned and pointed at ███████████████████████.

4      47.    ███████████████████████ stated that in the evening of March 29th,
5  JESUS VENEGAS-GATICA and the female (HERNESTINA VENEGAS-GATICA)
6  drove him to the Sacramento Amtrak station in a white Honda. While at the Sacramento
7  Amtrak station, ████████████████████ stated that he and JESUS VENEGAS-
8  GATICA went into the station, while the female (HERNESTINA VENEGAS-GATICA)
9  stayed inside the vehicle. JESUS VENEGAS-GATICA purchased a ticket for ████████
10  ███████████████████ to travel to Kelso, Washington. ██████████████████████
11  █████ stated that JESUS VENEGAS-GATICA was wearing a short sleeved shirt that
12  had a similar pattern to █████████████████████ current shirt and dark blue
13  pants.

14      48.    Phone pings for **Hernestina's phone** and **Jesus's first phone** confirmed
15  ███████████████████████ statement including not only the trip to the Amtrak
16  station, but also that both phones were at a hotel next to the interstate in Stockton,
17  California overnight on March 29th.

18      49.    ███████████████████████ told law enforcement the following: This
19  was his first time transporting methamphetamine. He was going to be paid $800 total
20  ($400 per suitcase) when he arrived in Washington. He did not know who was going to
21  pick him up in Kelso but he was going to identifiable to the driver by his clothing. If that
22  failed, he would call JESUS VENEGAS-GATICA to get in touch with the driver. To
23  avoid detection, he shaved off his beard in the past 24 hours, prior to boarding the train.

24      50.    During the interview, **Jesus's first phone** called ████████████████
25  ███████ numerous times. In the hours after the 55 pounds of methamphetamine had been
26  seized by law enforcement, JESUS VENEGAS-GATICA and HERNESTINA
27  VENEGAS-GATICA both shut off their cell phones. **Hernestina's phone** failed to locate
28  until the phone service was ultimately disconnected. **Jesus's first phone** only located one

COMPLAINT – 20
*United States v. Venegas-Gatica et al/*
2022R00583

time in Oregon in the following days before ultimately being disconnected. As mentioned

below, the Venegas DTO had more methamphetamine for sale within Washington only a

few days later. This leads investigators to believe that the single ping on **Jesus's first**

**phone** in Oregon shows that Jesus Venegas-Gatica travelled south to coordinate the next

load of methamphetamine to Washington. A few days later, **Jose's first phone** was also

disconnected.

### Buy/Walk #3 (Centralia/Lewis County)
### One Kilogram of Methamphetamine

51.     In early April 2022, CI 311 told investigators that they were contacted by a

new number, 916-617-1418 (**Jose's second phone**), for the Venegas DTO via text asking

for a phone call and that this was the new phone number to contact them on. CI 311

called the number and spoke with a Hispanic male. CI 311 stated that the voice sounded

like the same person that they were talking to over **Jose's first phone**. The male told CI

311 that a load of methamphetamine had been seized by law enforcement and to give

them two to three days and he will be back in business with more methamphetamine for

CI 311. A records check of the cellular number for **Jose's second phone** showed that it

was activated that same day and was subscribed to a "Salvador Atenpa" out of Federal

Way, Washington. This name and address have been previously utilized by other

members of the Venegas DTO.

52.     The following day, CI 311 received a call from **Jose's second phone** and

was told that the Venegas DTO will be able to provide more methamphetamine the

following day. The male also said that he was lowering his price to $5,000 per kilogram.

CI 311 responded via text by saying that they will only have $2,500. **Jose's second**

**phone** responded: "its ok don't worry you pay me the rest later."

53.     On April 7, 2022, CI 311 spoke with **Jose's second phone** and they agreed

to deliver one kilogram of methamphetamine in Centralia. The male said that he was

waiting on his "uncle." Based on past practices of the Venegas DTO, law enforcement

COMPLAINT – 21
*United States v. Venegas-Gatica et al*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   believed that using the term "uncle" instead of "cousin" meant that CRISTOBAL

2   VENEGAS-DIAZ would deliver the methamphetamine instead of JUAN TOLENTINO-

3   CHINO.

4        54.    In preparation for this deal, CI 311 met with investigators and called **Jose's**

5   **second phone** in the presence of the agents. Investigators heard CI 311 tell **Jose's second**

6   **phone** that they were in Centralia and ready to meet. The male on **Jose's second phone**

7   told them that he would call his "uncle" and call CI 311 back. Moments later, CI 311

8   received a call from **Jose's second phone.** The caller said that he would be sending his

9   "uncle" to the Nike Outlets in Centralia. Law enforcement searched CI 311 and

10  confirmed that they had no narcotics. Law enforcement provided CI 311 $2,500 in

11  prerecorded buy funds and attached a wire intercept device to monitor their safety.

12       55.    Once parked at Nike, surveillance units observed CRISTOBAL

13  VENEGAS-DIAZ arrive in **Cristobal's vehicle**. Upon CRISTOBAL VENEGAS-

14  DIAZ's arrival, CI 311 received a call from **Jose's second phone.** The caller told CI 311

15  that his "uncle" is by the Nike store and asked CI 311 to walk to the "uncle's" car.

16       56.    Law enforcement kept CI 311 under constant surveillance as CI 311

17  departed the undercover vehicle, walked to **Cristobal's vehicle,** and entered the

18  passenger side of the vehicle. Once inside **Cristobal's vehicle**, CI 311 handed

19  CRISTOBAL VENEGAS-DIAZ $2,500 in exchange for one kilogram (2.2 pounds) of

20  methamphetamine. CRISTOBAL VENEGAS-DIAZ asked CI 311 what they were

21  driving and where the vehicle was parked. CI 311 pointed it out, at which time

22  CRISTOBAL VENEGAS-DIAZ drove them to their vehicle. CI 311 exited the Honda

23  Civic with the drugs and rejoined the undercover agent. Law enforcement field tested the

24  suspected methamphetamine, which tested positive for the presence of

25  methamphetamine. After driving to a pre-determined location, CI 311 conducted a

26  debrief and was searched for contraband with negative results. During the debrief, CI 311

27  received a phone call from **Jose's second phone.** The caller asked who was with CI 311

28

COMPLAINT – 22
*United States v. Venegas-Gatica et al/*
2022R00583

1    during the deal. CI 311 responded by stating that the driver was one of their narcotics

2    business partners.

3       57.    Investigators followed CRISTOBAL VENEGAS-DIAZ as he departed the

4    parking lot and proceeded to a nearby restaurant where he ate alone. Investigators

5    maintained surveillance on CRISTOBAL VENEGAS-DIAZ as he exited the restaurant

6    and drove back to **the Centralia Residence.**

7

8                   **Buy/Walk #4 (Centralia/Lewis County)**
                  **One Pound of Methamphetamine**

9       58.    On April 9th, 2022, investigators installed a judicially authorized GPS

10    tracking device on **Cristobal's vehicle**.

11       59.    On April 15th, 2022, phone pings for **Jose's second phone** showed it

12    traveled north from California to Washington. Investigators observed JOSE VENEGAS-

13    GATICA, who was previously hiding in California, arrive in Washington and meet with

14    JESUS VENEGAS-GATICA. When JOSE VENEGAS-GATICA arrived in Washington,

15    he was accompanied by an unknown individual, later identified by law enforcement as

16    CUTBERTO HERNANDEZ-GATICA. The phone pings of **Jose's second phone**

17    matched the travel of JOSE VENEGAS-GATICA while he was within Washington.

18    Within a few days, JOSE VENEGAS-GATICA and **Jose's second phone** returned to

19    Fresno, CA.

20       60.    In mid-April 2022, CI 311 received a call from **Jose's second phone** and a

21    new phone number—323-915-9048 (**Jesus's second phone**)—asking him to pay the

22    money CI 311 owed for previously fronted methamphetamine. As detailed later in this

23    affidavit, law enforcement later compared phone pings to visual surveillance of JESUS

24    VENEGAS-GATICA to confirm that he possessed and used **Jesus's second phone**.

25    Using **Jose's second phone,** JOSE VENEGAS-GATICA agreed to meet CI 311 at 1730

26    hours at the Nike Outlet in Centralia. Using **Jesus's second phone,** JESUS VENEGAS-

27    GATICA told CI 311 that he wanted to sell CI 311 more drugs. In the hour before the

28    agreed upon meet, **Jesus's second phone** called CI 311 and said that they didn't have

COMPLAINT – 23
*United States v. Venegas-Gatica et al*/
2022R00583

1   anyone to meet CI 311 until later in the day. Law enforcement drove CI 311 to the Nike

2   Outlets and set up surveillance. Law enforcement searched CI 311 and confirmed that

3   they had no narcotics on their person. Law enforcement provided CI 311 $2,500 in

4   prerecorded buy funds and attached a wire intercept device to monitor their safety.

5        61.     Prior to the agreed upon arrival time, **Jose's second phone** called CI 311.

6   The caller sounded like someone other than JOSE VENEGAS-GATICA. He said that his

7   "uncle" would be coming to meet them in the same car as before. The use of the term

8   "uncle" indicated to investigators that CRISTOBAL VENEGAS-GATICA would be

9   coming to meet CI 311.

10        62.     CI 309 provided Law enforcement with a third phone number believed to

11   be associated with JESUS VENEGAS-GATICA—253-316-1866 (**Jesus's third phone**).

12   Law enforcement confirmed that **Jesus's third phone** is used by JESUS VENEGAS-

13   GATICA by comparing phone tolls and common contacts with his other cellular devices.

14        63.     During this fourth controlled buy, on April 21, 2022, phone pings for

15   **Jesus's third phone** initially showed JESUS VENEGAS-GATICA near **the Lakewood**

16   **Residence**. He then traveled south on I-5 and into Centralia. Around this same time, law

17   enforcement observed Cristobal leave **the Centralia Residence** in **Cristobal's vehicle**

18   and travel directly to the Nike Outlets. **Jesus's third phone** pinged one time within the

19   margin of error at or near **the Centralia Residence**. However, investigators were unable

20   to locate him near the address at that time.

21        64.     Law enforcement drove CI 311 to the Nike Outlets and set up surveillance.

22   Law enforcement searched CI 311 and confirmed that they had no narcotics on their

23   person. Law enforcement provided CI 311 $2,500 in prerecorded buy funds and attached

24   a wire intercept device to monitor their safety. When CRISTOBAL VENEGAS-DIAZ

25   arrived, he parked near CI 311's vehicle and CI 311 got out and entered **Cristobal's**

26   **vehicle**. CRISTOBAL VENEGAS-DIAZ drove a loop around the parking lot before

27   dropping CI 311 off back at their vehicle. Law enforcement kept CI 311 under constant

28   supervision as they walked directly back to the undercover vehicle and handed over the

COMPLAINT – 24
*United States v. Venegas-Gatica et al*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

methamphetamine and wire interception device. Once back with the undercover investigator, CI 311 stated that CRISTOBAL VENEGAS-DIAZ sold CI 311 approximately one pound of methamphetamine. Law enforcement field tested the suspected methamphetamine, which tested positive for the presence of methamphetamine.

65.     After the sale, law enforcement followed CRISTOBAL VENEGAS-DIAZ. After stopping at a Nike store and a Mexican food and item store, he returned to **the Centralia Residence.**

### Surveillance of Jose Venegas-Gatica in Fresno, CA

66.     In late April, 2022, law enforcement conducted surveillance on JOSE VENEGAS-GATICA in Fresno, California. Investigators observed Jose Venegas-Gatica leave and later return to **the Fresno Residence**. When Jose Venegas-Gatica came out to the yard, law enforcement called **Jose's second phone**. They observed Jose Venegas-Gatica pick up his phone at the same time the call connected. Agent Rodenburg heard his voice and confirmed that it was the same voice he had overheard on several of the phone calls from the controlled buys involving CI 311. Based on Jose's connection to the two phones being used as the "dispatcher" for all of the Venegas DTO drug transactions, law enforcement believe that he facilitated and dispatched all of the methamphetamine deals and the money drop for CI 311.

### Surveillance of Jesus Venegas-Gatica

67.     On April 22nd, 2022, through a Trap and Trace Ping order, investigators began receiving pings for **Jesus's second phone**. Investigators noted that JESUS VENEGAS-GATICA appeared to be using at least two phones because **Jesus's second phone** and **Jesus's third phone** would always ping in close proximity to one another.

68.     Between April 25th and April 28th, 2022, both **Jesus's second phone** and **Jesus's third phone** were pinging in the proximity of **the Lakewood Residence**. While

COMPLAINT – 25
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

conducting surveillance at this apartment, investigators observed JESUS VENEGAS-GATICA walk out of the apartment, enter an older Chevrolet Tahoe that was previously registered to him, and leave as the sole occupant of the vehicle. As soon as he left, the pings for both devices traveled away from the apartment, confirming that JESUS VENEGAS-GATICA uses both cellular devices and still resides at this address.

### $2,500 Money Drop (Centralia/Lewis County)

69.     In early May, 2022, CI 311 told investigators that he/she was contacted by **Jose's second phone.** JOSE VENEGAS-GATICA said that he had more product and that he wanted payment for previously delivered methamphetamine. At the direction of investigators, CI 311 agreed to meet the following day to pay the debt and purchase more methamphetamine.

70.     The following day, CI 311 told investigators that they were unable to reach JOSE VENEGAS-GATICA on **Jose's second phone**. Investigators noted that the phone pings for **Jose's second phone** were failing to locate, indicating that the phone was turned off. At the direction of investigators, while in the presence of investigators, CI 311 called **Jesus's second phone.** JESUS VENEGAS-GATICA told CI 311 that he was able to meet later that morning to provide more methamphetamine. Shortly after, investigators observed CRISTOBAL VENEGAS-DIAZ exit **Cristobal's vehicle** and enter **the Centralia Residence** carrying a backpack.

71.     While in the presence of investigators, CI 311 called **Jesus's second phone** and stated that he/she was in Centralia and ready to meet. JESUS VENEGAS-GATICA stated that he was approximately ten minutes away from the Nike Outlets in Centralia. Within five minutes, investigators observed CRISTOBAL VENEGAS-DIAZ exit **the Centralia Residence** carrying the same backpack and enter **Cristobal's vehicle**. Law enforcement followed CRISTOBAL VENEGAS-DIAZ as he drove directly to the Nike Outlets. Meanwhile, law enforcement searched CI 311 and confirmed that he/she had no narcotics on their person. Law enforcement provided CI 311 $3,900 in prerecorded buy

COMPLAINT – 26
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    funds and attached a wire intercept device to monitor their safety. Investigators followed

2    CI 311 directly to the Nike Outlets. When CI 311 arrived, they received a phone call from

3    **Jesus's second phone.** JESUS VENEGAS-GATICA told CI 311 to enter the Nike store

4    to meet the "uncle." Law enforcement watched CI 311 exit their vehicle and walk inside

5    the Nike store. Shortly after, CI 311 exited the store with CRISTOBAL VENEGAS-

6    DIAZ and entered **Cristobal's vehicle**. After a brief time, CRISTOBAL VENEGAS-

7    DIAZ drove CI 311 back to their vehicle. Investigators maintained surveillance of CI 311

8    as they drove to a pre-determined location to debrief.

9         72.    At the debrief, CI 311 told investigators the following: In the car, CI 311

10   asked CRISTOBAL VENEGAS-DIAZ for more product at least twice. CRISTOBAL

11   VENEGAS-DIAZ responded "yes," but once CI 311 gave CRISTOBAL VENEGAS-

12   DIAZ the $3,900 of pre-recorded money, CRISTOBAL VENEGAS-DIAZ placed a

13   phone call and handed the phone to CI 311. The person on the other end of the phone was

14   a Hispanic male who said that it would be three more days until there was more

15   methamphetamine available. After some back and forth, the Hispanic male agreed to

16   keep $2,500 based on the prior debt and return the extra $1,400 to CI 311. CI 311

17   returned to law enforcement and turned over the remaining $1,400 to investigators. Law

18   enforcement searched CI 311 and confirmed that they had no narcotics or money on their

19   person.

20        73.    Investigators followed CRISTOBAL VENEGAS-DIAZ as he left the

21   parking lot. He drove to a nearby restaurant where he ate alone. After eating, he drove

22   back to **the Centralia Residence**.

23        74.    Later that day, CI 311 called investigators and stated that they just received

24   a phone call from **Jesus's second phone.** JESUS VENEGAS-GATICA told CI 311 that

25   he was "sorry" for not having more methamphetamine and that he wanted to make sure

26   that CI 311 wasn't "mad" at him for tricking them to pay the $2,500. JESUS VENEGAS-

27   GATICA said that he trusted CI 311, and that they wanted CI 311's trust. JESUS

28

COMPLAINT – 27
*United States v. Venegas-Gatica et al*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   VENEGAS-GATICA "promised" to provide CI 311 more methamphetamine within the
2   next three days.

3   **Arrests of Venegas DTO and Seizure of over 20 kilograms of methamphetamine**

4   75.    On May 9, 2022, Fresno County Superior Court Judge Adolfo M. Corona
5   signed a warrant to search **the Fresno Residence**. On May 9, 2022, Lewis County
6   Superior Court Judge James Lawler signed warrants to arrest JESUS VENEGAS-
7   GATICA, JOSE VENEGAS-GATICA, HERNESTINA VENEGAS-GATICA,
8   CRISTOBAL VENEGAS-GATICA, JUAN TOLENTINO-CHINO, and ███████████
9   ███████████. On May 10, 2022, Lewis County Superior Court Judge James
10  Lawler authorized warrants to search **the Lakewood Residence**, **the Centralia
11  Residence**, and **Cristobal's vehicle**.

12  76.    On May 10, 2022, CI 311 told investigators that they were in contact with
13  JOSE VENEGAS-GATICA over **Jose's second phone**, who told CI 311 that they would
14  be able to have methamphetamine delivered to them on the following day. Late that
15  evening, investigators saw **Cristobal's vehicle** leave **the Centralia Residence** around
16  11:30 PM and travel to a remote area near Maytown, Washington. Around the same time,
17  **Jesus's third phone** and **Jesus's second phone**, after being at or near **the Lakewood
18  Residence** for several days, departed **the Lakewood Residence** and traveled to the same
19  area as **Cristobal's vehicle** before returning to **the Lakewood Residence**. Based on my
20  training and experience, CI 311's statements—that the DTO, who was previously unable
21  to provide methamphetamine, was now able to provide methamphetamine the following
22  morning—combined with the late evening hour movement of **Cristobal's vehicle**,
23  **Jesus's third phone**, and **Jesus's second phone** all coming within close proximity of
24  one another, suggests that a fresh load of methamphetamine had arrived in Washington
25  for the Venegas DTO to sell. As described below, law enforcement later confirmed this
26  suspicion through a search warrant that uncovered over 16 kilograms of
27  methamphetamine at Jesus' home and over 3 kilograms of methamphetamine in
28  Cristobal's vehicle.

COMPLAINT – 28
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    77.    On May 11, 2022, Law Enforcement served the above mentioned search

2  warrants on **the Lakewood residence**, **the Centralia residence**, **the Fresno residence**,

3  and **Cristobal's vehicle**. Law Enforcement arrested HERNESTINA VENEGAS-

4  GATICA and JUAN TOLENTINO-CHINO on their outstanding Lewis County Superior

5  Court arrest warrants.

6    78.    During the search of **the Lakewood Residence.** Law enforcement located

7  CUTBERTO HERNANDEZ-GATICA in the living room and JESUS VENEGAS-

8  GATICA in a bedroom. Inside that bedroom, law enforcement found approximately 16

9  kilograms of methamphetamine inside a suitcase. Law enforcement read both suspects

10  their *Miranda* warnings and they agreed to speak with investigators. JESUS VENEGAS-

11  GATICA told investigators that the methamphetamine was his, that he had made a

12  delivery of one kilogram of methamphetamine the night before to a customer in Tacoma,

13  WA, and that CUTBERTO HERNANDEZ-GATICA had brought the methamphetamine

14  to his residence the night before from California.

15    79.    CUTBERTO HERNANDEZ-GATICA stated that he had transported the

16  methamphetamine from California to Washington the night before and was paid

17  approximately $4,000 by JESUS VENEGAS-GATICA to bring the methamphetamine

18  north. Investigators located $3,800 in a backpack belonging to CUTBERTO

19  HERNANDEZ-GATICA.

20    80.    Law enforcement located both **Jesus's third phone** and **Jesus's second**

21  **phone** in JESUS VENEGAS-GATICA's bedroom. He initially claimed that **Jesus's**

22  **second phone** belonged to his friend, but he later admitted that both phones belonged to

23  him and that he used them to conduct drug transactions. He later gave investigators

24  verbal consent to search his phones.

25    81.    Law enforcement located **Cutberto's phone** near CUTBERTO

26  HERNANDEZ-GATICA's person during the search of **the Lakewood Residence**. He

27  admitted to investigators that this was his phone. He also admitted that he lived at **the**

28  **Fresno Residence** where JOSE VENEGAS-GATICA was living and was arrested at.

COMPLAINT – 29
*United States v. Venegas-Gatica et al/*
2022R00583

82.     During the search of **the Centralia Residence** CRISTOBAL VENEGAS-DIAZ was located near the front door, Dionicio Venegas-Gatica was located in the bathroom, and one other male was located within a bedroom. In a bedroom believed to be used by CRISTOBAL VENEGAS-DIAZ, law enforcement located $2,471 in U.S. Currency, drug packaging material, a cellphone for CRISTOBAL VENEGAS-DIAZ, utility power documents bearing the name of HERNESTINA VENEGAS-GATICA, pay stubs bearing the name CRISTOBAL VENEGAS-DIAZ, and a copy of the 2020 search warrant and seizure notice bearing JOSE VENEGAS-GATICA. In the parking lot of the apartment complex, law enforcement located **Cristobal's vehicle**, which had three kilograms of methamphetamine concealed in the trunk.

83.     Law enforcement seized a second cell phone from CRISTOBAL VENEGAS-DIAZ' person. They located a third cell phone in the living room near where CRISTOBAL VENEGAS-DIAZ was sitting when law enforcement entered.

84.     Law enforcement conducted a traffic stop on JOSE VENEGAS-GATICA after he left **the Fresno Residence**. During the traffic stop, he provided investigators with two Mexico identification cards bearing the name "Rafael Sanchez-Gomez."  He stated that **Jose's third phone** was his cellular phone. On the floorboard of the vehicle, law enforcement located **Jose's second phone** between JOSE VENEGAS-GATICA and his girlfriend who both denied ownership of the phone. The girlfriend later stated that the phone belonged to JOSE VENEGAS-GATICA. During the subsequent search of **the Fresno Residence**, investigators located **Jose's first phone** inside a closet in a suitcase bearing an identification tag for "Rafael Sanchez-Gomez."

85.     Law enforcement arrested JUAN TOLENTINO-CHINO in Astoria, Oregon pursuant to a warrant. In a search incident to arrest, law enforcement located and seized a cell phone from his person. JUAN TOLENTINO-CHINO admitted that it was his cellular phone and provided investigators verbal consent to search his phone.

86.     Law enforcement arrested HERNESTINA VENEGAS-GATICA arrest in Astoria, Oregon pursuant to a warrant. In a search incident to arrest, law enforcement

COMPLAINT – 30
*United States v. Venegas-Gatica et al/*
2022R00583

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   located and seized two cell phones from her person. HERNESTINA VENEGAS-

2   GATICA signed a DEA consent to search form (in Spanish) and provided investigators

3   with the unlock codes and patterns to unlock the devices.

4

5                                  **CONCLUSION**

6       87.     Based on the foregoing, there is probable cause to charge JESUS

7   VENEGAS-GATICA, JOSE VENEGAS-GATICA, JUAN TOLENTINO-CHINO,

8   CRISTOBAL VENEGAS-DIAZ, and █████████████████████ with the crimes

9   of *Distribution of Controlled Substances, and Possession with Intent to Distribute*

10  *Controlled Substances* (methamphetamine), in violation of Title 21, United States Code,

11  Sections 841(a)(1) and 841 (b)(1)(A).

12      88.     Under Federal Rule of Criminal Procedure 4.1, this complaint is presented

13  by reliable electronic means.

14

15

16                              *Colin Fine*
                    _____

17                              COLIN FINE, Complainant
                                Special Agent, DEA

18

19

20      The above-named agent provided a sworn statement attesting to the truth of the

21  contents of the foregoing affidavit on May 31, 2022. Based on the complaint and

22  sworn affidavit, the Court finds that there is probable cause to believe that the

23  defendants committed the offenses set forth in the complaint.

24      Dated June 1, 2022.

25

26

27                              *Theresa L. Fricke*

28                              The Hon. Theresa L. Fricke
                                United States Magistrate Judge

COMPLAINT – 31
*United States v. Venegas-Gatica et all*
2022R00583